UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOSELYN ROMERO-PEREZ,

Petitioner,

v.

TODD BLANCHE, *et al*.,

Respondents.

Case No. 2:26-cv-01708-RFB-BNW

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Joselyn Romero-Perez's Petition for Writ of Habeas Corpus, which she filed pursuant to 28 U.S.C. § 2241. See generally Pet. for Writ of Habeas Corpus, ECF No. 1 [hereinafter, "Petition"]. Through it, she challenges the lawfulness of her ongoing detention at the Henderson Detention Center ("HDC") in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Respondents are detaining Petitioner without providing an opportunity for release on bond, as they assert that she is subject to 8 U.S.C. § 1225(b)(2)(A). See Resp'ts' Notice of Class Membership 2, ECF No. 10 [hereinafter, "Opposition"]. In turn, Petitioner argues that her detention violates: (i.) the Immigration and Nationality Act ("INA"); (ii.) the Fifth Amendment's Due Process Clause; and (iii.) this Court's partial summary judgment in Jacobo Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799 (D. Nev. Mar. 30, 2026). See Petition at 1–2; see also generally Pet'r's Traverse, ECF No. 13 [hereinafter, "Traverse"]. Indeed, Ms. Romero-Perez asserts that her detention is void *ab initio*, such that she is entitled to immediate release from government custody. See Traverse at 2–5.

Meanwhile, Respondents invoke their novel statutory interpretation of § 1225(b)(2)(A) to justify Petitioner's detention. See generally Opposition. This Court is well acquainted with Respondents' re-imagination of the INA; after all, the Court has repeatedly rejected it as unlawful.

See, e.g., Jacobo Ramirez, 2026 WL 879799, at *34–35 (collecting cases). In fact, the Court recently granted relief on this precise issue in a related class-action, which is inextricably intertwined with this case. Specifically, the Court: (i.) declared that Respondents' interpretation is wrong; (ii.) declared that members of the Jacobo Ramirez Class are entitled to robust procedural protections under 8 U.S.C. § 1226(a); and (iii.) vacated Respondents' related policies—namely, the Board of Immigration Appeals' decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). See Jacobo Ramirez, 2026 WL 879799, at *33–34. As discussed below, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. Therefore, her ongoing detention is unlawful under the INA and its implementing regulations. Furthermore, the Court also finds that Respondents are violating the Due Process Clause in tote, as they are detaining Petitioner without supplying any procedural safeguards or legitimate justifications. Finally, the Court concludes that Petitioner must be immediately released from government custody, as her detention has been unlawful from the very moment it began. Thus, the Court grants Petitioner a writ of habeas corpus and orders Respondents to immediately release her from custody.

## I.      CLASS MEMBERSHIP

From the outset, the Court finds that Ms. Romero-Perez is a member of the Jacobo Ramirez Class. This certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo Ramirez, 2026 WL 879799, at *4 (citation omitted). Based on the Parties' undisputed factual allegations, and the evidence they supply, the Court finds that Ms. Romero-Perez satisfies these criteria. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings). First, Petitioner is an undocumented noncitizen who is actively being detained by ICE. See Petition at 6; Pet'r's R. of Deportability/Inadmissibility 3,

ECF No. 10-1 [hereinafter, "I-213"]; Pet'r's Notice to Appear 7, ECF No. 10-1 [hereinafter, "NTA"]. Second, she is in removal proceedings before the Las Vegas Immigration Court, which sits in the United States District of Nevada. See generally NTA. Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. See id. at 7 & 10; Petition at 6; I-213 at 3. Fourth, Respondents are detaining her pursuant to § 1225(b)(2)(A); in other words, the government is not asserting that Petitioner is subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See generally Opposition; cf. also Petition at 6. Fifth, Petitioner was arrested well within our country's interior, long after she entered the United States. See I-213 at 3–4; Petition at 6. In sum, Petitioner clearly falls within the Jacobo Ramirez Class, and she is entitled to the relief afforded to the Class by this Court. Cf. Navarro v. Mukasey, 518 F.3d 729, 737 (9th Cir. 2008) ("They are, accordingly, class members eligible for relief."). Indeed, Respondents concede as much through their return. See Opposition at 1 (". . . Petitioner is a Class Member.").

Therefore, Petitioner's ongoing detention is unlawful, as the government is improperly subjecting her to mandatory detention under § 1225(b)(2)(A), even though she is eligible for release on bond under § 1226(a) and its implementing regulations. See Jacobo Ramirez, 2026 WL 879799, at *33–34.

## II.    DUE PROCESS

The Court also finds that Petitioner's detention violates the Due Process Clause of the Fifth Amendment. The Court has previously clarified that similarly situated noncitizens are entitled to due process under the Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d. 1123, 1158–60 (D. Nev. 2025); Jacobo Ramirez v. Noem, --- F. Supp. 3d. ---, 2025 WL 3270137, at *8–9 (D. Nev. Nov. 24, 2025). The Court incorporates these holdings, and their underlying reasoning, by reference, and it applies them to the facts of this case. The Court now turns to Petitioner's due process claims.

### A. *Procedural Due Process*

To determine whether detention violates procedural due process, courts apply the three-part balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v.

Garland, 53 F.4th 1189, 1203–1207 (9th Cir. 2022) (collecting cases and clarifying that the Mathews test is appropriate in the context of immigration detention). Specifically, courts weigh the following three factors: (1.) "the private interest that will be affected by the official action"; (2.) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3.) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation omitted).

On balance, these factors weigh heavily in favor of Ms. Romero-Perez. First, Respondents are depriving Petitioner of her fundamental right to freedom. See Zadvydas v. Davis, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process Clause] protects.") (citation omitted). Second, the risk of an erroneous deprivation of liberty is extraordinarily high where immigration officials have the sole, unguided, and unreviewable discretion to detain Ms. Romero-Perez. Meanwhile, the procedures *required* by § 1226(a), and its implementing regulations, would undoubtedly mitigate this risk; after all, they subject ICE's "decision to detain [a noncitizen] . . . to numerous levels of review, each offering [the noncitizen] the opportunity to be heard by a neutral decisionmaker." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1210 (9th Cir. 2022); see also id. ("These procedures ensure[ ] that the risk of erroneous deprivation would be 'relatively small.'") (quoting Yagman v. Garcetti, 852 F.3d 859, 865 (9th Cir. 2017)). Finally, it is entirely unclear how the government is advancing its own interests by unlawfully subjecting noncitizens to mandatory detention. After all, the government's interest in enforcing our country's immigration laws cannot be served by violating them. Furthermore, the government is ballooning—*not reducing*—its fiscal and administrative burdens by expanding the scope of mandatory detention well beyond the INA's limits. See Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (describing the "staggering" costs of immigration detention). All things considered, it appears that the government only stands to gain from a faithful application of the INA—and *its own* implementing regulations.

///

- 4 -

**B.  *Substantive Due Process***

Outside of the criminal context, government detention violates the substantive component of the due process clause "unless the detention is ordered . . . in certain special and narrow nonpunitive circumstances, . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citations and quotation marks omitted). To date, Respondents have not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioner of her freedom. Instead, Respondents fall back on their faulty statutory interpretation, which indiscriminately condemns a legion of noncitizens to mandatory detention. See generally Opposition. But the Constitution demands more than that. The Executive Branch cannot round up noncitizens, incarcerate them, and decline to justify their own actions. In doing so, they strike "at the core of the liberty protected by the Due Process Clause from arbitrary governmental action:" freedom. See Hamdi v. Rumsfeld, 524 U.S. 507, 529 (2004) (citation omitted). In the absence of any justification for Petitioner's detention, which is poised to last for an untold period of time, the Court concludes that Respondents are also violating the substantive component of the Due Process Clause. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioner's detention violates her right to procedural and substantive due process and is, therefore, unconstitutional.

**III.    REMEDY**

Having found that Petitioner's ongoing detention is unlawful, the Court turns to the proper remedy. Before fashioning a remedy for this specific case, the Court outlines some general principles which govern habeas corpus proceedings. Federal courts have equitable discretion to fashion habeas relief as "law and justice require." Brown v. Davenport, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243). Indeed, this Court's remedial power is "broad and flexible" when it sits in habeas. See U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (citation omitted); Burnett v.

Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion the remedy as law and justice require . . . .") (citation omitted). Nonetheless, since "[h]abeas is at its core a remedy for unlawful executive detention," "[t]he typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008) (citations omitted). Since Ms. Romero-Perez's detention is void *ab initio*, the Court finds that the typical remedy is the appropriate one in this case.

Put differently, Petitioner's detention has been unlawful from the very moment it began; specifically, Respondents have deprived her of significant procedural protections which cannot be replicated unless she is released from government custody. Recall, Ms. Romero-Perez is properly subject to 8 U.S.C. § 1226(a), which supplies a suite of procedural protections vis-à-vis its implementing regulations. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196–97 (9th Cir. 2022). Relevant here, ICE must issue a warrant, and make an initial custody determination, to subject a noncitizen to detention under 8 U.S.C. § 1226(a).

Beginning with the warrant requirement, ICE must generally issue an administrative warrant (*i.e.*, a Form I-200) to arrest a noncitizen under § 1226(a). See Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, at *2 (D. Nev. Apr. 6, 2026) (citing 8 C.F.R. § 236.1(b)(1)); see also 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, [a noncitizen] may be arrested . . . .").[1] As this Court has previously explained, the warrant must be signed by an authorized immigration official, who indicates that they have probable cause to believe that a noncitizen is removable. See Djiwaje, 2026 WL 926753, at *3 (citing N.S. v. Dixon, 141 F.4th 279, 282–83 (D.C. Cir. 2025)) Otherwise, "the I-200 does not supply immigration authorities the power to arrest or detain noncitizens," as it is divorced from a finding of probable cause. See id.

Even when a noncitizen is properly apprehended, the noncitizen is entitled to an initial custody determination at the outset of their detention. See Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). At this stage, the noncitizen can secure their freedom by showing that they

---

[1] While the INA provides certain exceptions for warrantless arrests, these exceptions are narrow, limited, and irrelevant to this case, as the government does not invoke them. See Djiwaje, 2026 WL 926753, at *2 (citing 8 U.S.C. § 1357).

are neither dangerous nor a flight risk. See id. (citing § 236.1(c)(8)). Insofar as the arresting officer agrees, "[t]he [noncitizen] will be released." Id. (citing § 236.1(c)(8)).

Overall, the warrant requirement, the initial custody determination, and the full constellation of procedural safeguards embedded into § 1226(a) serve as powerful bulwarks against the arbitrary, erroneous, and unconstitutional deprivation of liberty. See id. at 1209. And, to state the obvious, they are mandatory under federal law. See Backcountry Against Dumps v. Fed. Aviation Admin., 77 F.4th 1260, 1267 (9th Cir. 2023) ("A federal agency . . . is obliged to abide by the regulations it promulgates.") (citations and quotation marks omitted).

Nonetheless, it appears that Respondents have swept them under the rug. In short, Respondents have not shown that ICE issued a proper warrant, or conducted an initial custody determination, for Ms. Romero-Perez. Instead, Respondents submitted an *unsigned* I-200, see Warrant for Arrest 6, ECF No. 10-1 [hereinafter, "I-200"], and declined to submit any evidence which demonstrates that ICE conducted an initial custody determination for Ms. Romero-Perez, even though this Court explicitly ordered them to do so. See Order to Show Cause 2, ECF No. 3. In fact, Respondents do not even attempt to argue that they complied with § 1226(a), and its implementing regulations, when they detained Petitioner. See generally Opposition. On this record, the Court must conclude that Respondents failed to satisfy their own binding regulations and, in doing so, denied Ms. Romero-Perez key procedural protections which she is entitled to.

Critically, Respondents cannot cure these violations by conducting a *post-hoc* bond hearing, as the warrant requirement and the initial custody determination are designed to prevent unjustified detention in the first instance. Put differently, "ordering a bond here 'would effectively allow the [g]overnment to transform an unlawful detention into a lawful one through *post-hoc* justifications.'" Melendez Paz v. Mullin, No. 2:26-cv-00296-RFB-MDC, 2026 WL 1194944, at *7 (D. Nev. May 1, 2026) (citation omitted). The Court will not bless Respondents' "detain first, justify later" approach to peoples' liberty, which eviscerates § 1226(a)s' regulatory framework and flies in the face of due process. See supra Part II. Therefore, the Court concludes that Ms. Romero-Perez must be immediately released from government custody so that she may benefit from all the procedures she is entitled to. That is what "law and justice" require. See 28 U.S.C. § 2243.

**IV.    MOTION TO TRANSFER**

Having resolved the merits of this case, the Court need not decide whether Respondents may transfer Petitioner beyond the State of Nevada. See generally Emergency Mot. for Leave to Transfer Pet'r Out of the Dist., ECF No. 6 [hereinafter, "Mot. to Transfer"]. Nonetheless, the Court briefly comments on the unusual nature of Respondents' request, as it highlights their refusal to comply with the law of this district.

As discussed above, the Court has already declared that members of the Jacobo Ramirez Class are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(a); instead, they are entitled to robust procedural protections pursuant to § 1226(a). See Jacobo Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *33–34 (D. Nev. Mar. 30, 2026). Respondents have acknowledged that Ms. Romero-Perez is a member of the Jacobo Ramirez Class. See Opposition at 1. Nonetheless, they have done nothing to remedy Ms. Romero-Perez's unlawful detention, which began long after this Court issued its partial summary judgment. See Petition at 6 (clarifying that Petitioner was detained on, or around, April 23, 2026). Instead, Respondents are attempting to transfer her beyond the State of Nevada based on her amorphous medical needs, see generally Mot. to Transfer, which appear to stem from her deplorable conditions of confinement. See Pet'r's Status Report 2, ECF No. 12 ("Before her ICE detention, Ms. Romero-Perez was not under medical or psychiatric care."); I-213 at 3 (stating that Petitioner "claim[ed] good health" at the outset of her detention); see also Pet'r's Status Report 2, ECF No. 12 (describing "hygiene issues at the Henderson Detention Center," which include the denial of menstrual products, limited showers, etc.). The Court will not authorize a transfer on this record.

**V.    CONCLUSION**

Based on the foregoing, **IT IS HEREBY ORDERED** the Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents' Emergency Motion for Leave to Transfer Petitioner Out of the District (ECF No. 6) is **DENIED** as moot.

**IT IS FURTHER ORDERED** Respondents must **IMMEDIATELY RELEASE**

Petitioner from detention on her own recognizance. Respondents are **ENJOINED** from imposing any constraints on Petitioner's liberty unless, and until, they properly detain her pursuant to § 1226(a), its implementing regulations, and the United States Constitution. Respondents have until **5:00 P.M.** on **June 15, 2026**, to comply with this Order.

**IT IS FURTHER ORDERED** Respondents must **ADVISE** Petitioner's Counsel of the date, time, and location of Petitioner's release at least two hours before they effectuate it.

**IT IS FURTHER ORDERED** that, upon Petitioner's release, Respondents must **RETURN** her personal property, including, but not limited to, her personal identification document(s), employment authorization form(s), etc.

**IT IS FURTHER ORDERED** Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** the Parties shall file a joint status report by **June 17, 2026**, which confirms the date, and time, of Petitioner's release from detention. The status report must also confirm Respondents' compliance with this Court's directives regarding the conditions of her release.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** June 15, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

- 9 -